566 So.2d 55 (1990)
Elliott ROSS, Appellant,
v.
Susan BANDI, Appellee.
No. 89-2624.
District Court of Appeal of Florida, Fourth District.
August 29, 1990.
Diane H. Tutt, Fort Lauderdale, for appellant.
Mark K. Koenig, West Palm Beach, for appellee.
*56 POLEN, Judge.
This is an appeal of the trial court's final judgment of dissolution of marriage and denial of appellant former husband's motion to vacate judgment and motion for rehearing. Appellant raises five points on appeal. We affirm in part and reverse and remand in part.
Appellant's first point argues that the trial court erred in voiding the parties' settlement agreement which the trial judge determined to be unfair on its face and a product of overreaching on the part of the husband. Casto v. Casto, 508 So.2d 330 (Fla. 1987). We disagree. The trial judge did not find appellant credible in his testimony concerning the circumstances surrounding the settlement agreement and found that he misled the court on several occasions.
Credibility of witnesses is particularly within the province of the fact-finder. S. Kornreich and Sons, Inc. v. Titan Agencies, Inc., 423 So.2d 940 (Fla. 3d DCA 1982). No citation is needed for the time honored legal principle that the trier of fact is in the best position to weigh the evidence and determine the credibility of the witnesses. Although the evidence was conflicting, the trial court's finding is supported by sufficient, competent evidence and we will not disturb it on appeal. Moore v. Jarvis Enterprises, Inc., 523 So.2d 1233 (Fla. 2d DCA 1988). Accordingly, we affirm point I on appeal.
On the other hand, we find merit in appellant's argument that the trial court erred when it determined appellant's corporate stock to be marital property.
In Temple v. Temple, 519 So.2d 1054 (Fla. 4th DCA 1988), appeal after remand, 539 So.2d 564 (Fla. 4th DCA 1989), the parties were separated at least four years prior to filing the petition for dissolution. Appellee husband acquired 100,000 shares of stock by using borrowed funds as well as sums earned after the separation. The trial court awarded appellant wife only 20,000 shares of the stock as part of the equitable distribution of the marital estate.
On review, this court found that it was not error for the trial court to make this award because of the lengthy separation and the time of acquisition. This court concluded that the stock would not have been a marital asset had either party filed for dissolution within a year or two of their separation. Id. at 1055.
We believe that the facts of this case are analogous with our decision in Temple in that appellant Ross purchased the stock as a result of a $10,000.00 loan from appellee[1] after the two were separated almost two years before the final hearing and after the two had petitioned for dissolution of marriage in December 1987. Accordingly, we reverse point II on appeal.
Point III on appeal argues that the trial court improperly valued appellant's corporate stock. We agree.
A trial court must base its valuation of a corporate asset upon competent substantial evidence. Greer v. Greer, 438 So.2d 535 (Fla. 2d DCA 1983); Novak v. Novak, 429 So.2d 414 (Fla. 4th DCA), pet. for review denied, 438 So.2d 833 (Fla. 1983). When property valuation is an integral part of the court's entire plan of distribution, confusion as to value requires reversal of the property award. Saxton v. Saxton, 454 So.2d 575 (Fla. 4th DCA 1984).
The record reflects that appellant's expert accountant could not determine the corporation's value because the books that she needed to make this valuation were not made available to her. Appellee presented *57 no expert testimony as to the corporation's value. Although Abe Ringer, a majority shareholder, testified as to what he thought the corporation might be worth, the corporation was in fact heavily in debt from penalties and nonpayment of taxes. While there is authority that as a general rule one who owns property may testify concerning its value without having special expertise, Foley v. Dick, 436 So.2d 139 (Fla. 2d DCA 1983), based on the facts before this court, Ringer's testimony as to what he believed the business to be worth was wholly inadequate to enable the trial court to make a fair determination. Therefore, we reverse point III on appeal.
We must also reverse as to point IV on appeal, since the trial court failed to grant appellant an evidentiary hearing on his rule 1.540(b) motion.
In Wiley v. Wiley, 546 So.2d 1149 (Fla. 4th DCA 1989), we found it to be reversible error for a trial court to deny the husband an evidentiary hearing on his rule 1.540(b) motion when he alleged "newly discovered evidence, which, could not have been produced at the time of the hearing." Id. at 1150.
In this instance, appellant alleged that after the final hearing, he learned that his interest in the corporation was completely valueless in light of the substantial IRS tax lien assessed against the corporation.[2] While the trial court may still deny relief on the rule 1.540(b) motion, it was an abuse of discretion to deny appellant's motion without first according the parties an evidentiary hearing.
Finally, our action as to points II, III and IV on appeal requires that we reverse the judgment of $9,070 entered against appellant in favor of appellee since the entry of that judgment might change as a result of the redistribution of the marital estate. Accordingly, we affirm point I on appeal and reverse and remand points II, III, IV and V for further action consistent with this opinion.
DOWNEY and GARRETT, JJ., concur.
NOTES
[1] At trial, appellee's testimony indicated the following:

Q: But when he called and asked you for ten thousand dollars, you agreed to lend it to him, is that not correct?
A: That's correct.
... .
Q: And then later he got back to you and said he wanted to borrow the ten thousand again, that he had a deal put back together, and you agreed to lend him ten thousand dollars again, which you did?
A: Right.
Q: And that was a straight loan, wasn't it? You expected to be repaid?
A: Yes.
[2] Several months prior to the final hearing, appellant had been forced out of the employ of the corporation by the two majority shareholders and therefore was not in a position to know about the tax lien.